M. J. HARDING, Petitioner, v. DISTRICT COURT OF POLK COUNTY et al., Respondents.

**INTOXICATING LIQUORS:** Contempt—Evidence—Sufficiency. Evidence reviewed, and held to justify a conviction of contempt in violating an injunction against the sale of intoxicating liquors.

**INTOXICATING LIQUORS:** Contempt—Evidence—Chemical Examination. The results of a chemical examination of duly identified liquors are admissible on an issue of contempt.

**INTOXICATING LIQUORS:** Contempt—Evidence—Use of Affidavits. Affidavits are admissible on the trial of a contempt proceeding, in

the absence of a demand for the cross-examination of the affiant. (Sec. 2028, Code of 1924.)

Headnote 1: 33 C. J. p. 703.   Headnote 2:   33 C. J. p. 703 (Anno.) Headnote 3: 33 C. J. p. 703 (Anno.)

Headnote 3: 6 R. C. L. 533.

*Certiorari to Polk District Court.*—HUBERT UTTERBACK, Judge.

NOVEMBER 23, 1926.

Original proceedings in certiorari, to review a judgment entered against petitioner in a prosecution against him for the alleged violation of an injunction restraining him from selling intoxicating liquors.—*Writ annulled.*

*Parsons & Mills* and *Volney Diltz,* for petitioner.

*Vernon R. Seeburger,* County Attorney, and *Russell Jordan,* Assistant County Attorney, for respondents.

STEVENS, J.—The petitioner was tried in the court below upon an information charging him with the violation of an injunction restraining him from the sale of intoxicating liquors,

1. INTOXICATING LIQUORS: contempt: evidence: sufficiency.
entered on June 29, 1918, in the district court of Polk County. The judgment imposed a fine of $600 and costs, including $50 attorney fees. Petitioner conducted a drug store at 1500 West Grand Avenue. On February 2, 1926, Mrs. Jennie Manbeck, police matron, George H. Keppel, peace officer of the city of Des Moines, R. C. Adams, a Federal prohibition officer, and L. W. Hardenbrook, captain of police, and others, accompanied by a Mrs. Reynolds, about 10:30 P. M., went in an automobile to a point between Fourteenth and Fifteenth Streets on the north side of Grand Avenue a short distance east of petitioner's place of business, and parked their car. Before leaving the police station, Mrs. Manbeck searched Mrs. Reynolds, for the purpose of making sure that she did not have intoxicating liquors about her person. Mrs. Reynolds, according to a prearranged plan, entered the drug store, in plain view of Mrs. Manbeck and Adams. She remained in the store about five minutes, when she returned with

a half pint of liquor, which was later analyzed and found to contain 80.4 per cent alcohol. Before going into the store, she was given a five-dollar bill, the number of which was taken by the officers. Immediately after Mrs. Reynolds left the store and delivered the one-half pint bottle containing the alcohol to Mrs. Manbeck, the officers entered and conducted a search of the drug store, but no intoxicating liquors were found.

The evidence is quite conclusive that Mrs. Reynolds secured the liquor while in petitioner's drug store. She did not appear as a witness at the time of the trial, but an affidavit signed and sworn to by her on February 4th was introduced by the county attorney. We quote the following therefrom:

"I went into Harding's drug store and spoke to Mr. Harding. I said, 'Can I get some stuff?' He said, 'How much do you want to get?' and I said, 'A ½ pt. of raw alcohol.' He called to a man by the name of Tom, who was in the drug store. Harding talked to Tom, and then Tom went behind the prescription case, and he was back there a little while. Mr. Harding waited on some customers. Then he went back of the prescription case, and came out and said to me, 'Step back there,—it is ready for you, and he will give it to you.' I went back there, and Tom gave me a ½ pt. of alcohol, and I gave him a marked $5 bill, and he gave me $2.50 in change. I left the drug store, and turned the liquor to Mrs. Manbeck."

Petitioner testified as a witness in his own behalf. He admitted that a woman entered his place of business on the evening in question, and that she sought to purchase alcohol of him. Petitioner's version of the conversation and what occurred is as follows:

"I was back of the cigar counter, and walked around in front to wait on her, and she said, 'Can I get some stuff?' I says, 'What do you mean, stuff?' She says, 'I want ½ pt. of alcohol.' I says, 'No,' I says, 'I don't handle any alcohol;' and she looked at me, and she says, 'Well, we are out on a party, and I am trying to get some stuff.' And she looked up at that young man right in front,—there was a young fellow standing there,— and she says, 'I know this young fellow,—maybe I can get some from him.' She walks over to him, and when she did that, I walked around the fountain; and that ended my conversation with her. She talked there a little bit, and then talked to an-

other party in the room. I know the fellow by sight that she mentioned, but I don't know him by name. His name was Tom. He has been around the corner quite a bit."

The only real point of controversy between the testimony of Mrs. Reynolds and that of the petitioner is as to the actual sale of the liquor, and who sold it. Petitioner apparently did not remonstrate against Mrs. Reynolds' purchasing liquor of Tom, or against his making a sale thereof in petitioner's place of business. He "simply walked around the fountain," and paid no more attention to them. The $5.00 bill given to Mrs. Reynolds was not found by the searching party. This is, however, of little importance, as it was given to Tom, who, according to the version of Mrs. Reynolds, delivered her the bottle containing the alcohol. The evidence is sufficient to sustain the judgment.

The testimony of the city chemist who analyzed a portion of the contents of the bottle was objected to by petitioner upon the ground that it was incompetent, irrelevant, and immaterial. The objection was properly overruled. The identification of the liquor was all that is required for the admission of the exhibit in evidence.

2. INTOXICATING LIQUORS: contempt: evidence: chemical examination.

An effort was made to exclude the affidavit of Mrs. Reynolds. The admission in evidence of affidavits upon the trial of an information charging the contemptuous violation of a liquor injunction is authorized by Section 2028 of the Code of 1924, in the absence of a demand for the cross-examination of the affiant. No demand was made in this case. *Teasdale v. Anderson*, 196 Iowa 673; *Lucia v. Utterback*, 197 Iowa 1181.

3. INTOXICATING LIQUORS: contempt: evidence: use of affidavits.

The court did not commit error in the rulings complained of. The record discloses no ground for reversal.—*Writ annulled.*

FAVILLE, VERMILION, and ALBERT, JJ., concur.